IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS CHRISTIAN ELLIOTT,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | : Civil No. 1:26-CV-00170<br>:<br>:<br>:<br>:<br>: (Chief Magistrate Judge Bloom)<br>:<br>:<br>:<br>: |

MEMORANDUM OPINION

## I. Introduction

Nicholas Elliott filed an application under Title XVI of the Social Security Act for supplemental security income on March 13, 2023. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Elliott was not disabled from his application date through March 28, 2025, the date of the ALJ's decision.

Elliott now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion,'"[1] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

Elliott initially filed for disability and disability insurance benefits, as well as supplemental security income, due to Klinefelter syndrome, anxiety, depression, and bipolar disorder.[2] Elliott subsequently withdrew his Title II Child's Disability Benefit claim and proceeded with his requested hearing as to his supplemental security income claim. Elliott was 31 years old at the time of his application, had at least a high school education, and had no past relevant work.

An ALJ held a hearing on Elliott's disability application on January 16, 2024.[3] Elliott and a Vocational Expert ("VE") both appeared and testified at this hearing.[4] Following this hearing, on March 28, 2025, the ALJ issued a decision denying the plaintiff's application for supplemental security income.[5] The ALJ first concluded that Elliott had not engaged

---

[1] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[2] Tr. 63.
[3] Tr. 36-61.
[4] *Id.*
[5] Tr. 14-35.

in substantial gainful activity since his alleged onset date of September 19, 1993.[6] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Elliott suffered from severe impairments of depressive disorder and an unspecified neurocognitive disorder.[7] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[8]

Between Steps 3 and 4, the ALJ concluded that Elliott has the residual functional capacity ("RFC") to perform unskilled work activity limited to low stress simple routine repetitive tasks, requiring only occasional decision making and changes in the work setting with no interaction with the public but occasional interaction with co-workers and supervisors.[9] The ALJ considered the medical records, opinion evidence, and the plaintiff's subjective symptoms.[10] Ultimately, the ALJ concluded that the plaintiff is capable of work at all exertional levels, but he is limited to unskilled work within the aforementioned parameters.[11]

---

[6] Tr. 20.
[7] Tr. 20-23.
[8] Tr. 24-26.
[9] Tr. 26
[10] Tr. 24-29.
[11] Tr. 29.

Having made these findings, the ALJ found at Step 4 that Elliott had no relevant past work.[12] But at Step 5, relying on VE testimony, found that he could perform the occupations of conveyor line worker, product sorter, and inspector/hand packager.[13] Accordingly, the ALJ found that Elliott had not met the stringent standard prescribed for supplemental security income and denied his claim.[14]

This appeal followed.[15] On appeal, Elliott argues that the ALJ erred in his RFC determination regarding Elliott's limitations in interacting with others, as well as his consideration of Elliot's alleged need for breaks.[16] This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

---

[12] Tr. 29.
[13] Tr. 29-30.
[14] Tr. 30.
[15] Doc. 1.
[16] Doc. 9.

## III. Discussion

### A. Substantial Evidence Review and the Disability Determination Process

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[17] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[19] The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[20]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[21] Instead, we must determine whether there is substantial evidence to

---

[17] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[18] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[19] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[20] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).
[21] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

support the ALJ's findings. In doing so, we must also determine whether the ALJ adequately articulated the reasons for his decision.[22] The ALJ is not required to use "magic" words but rather must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[23] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[24]

To be eligible for benefits, a claimant must demonstrate that he or she has a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[25] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[26] In making a disability determination, the ALJ follows a five-step

---

[22] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[23] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[24] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).
[25] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[26] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

evaluation.[27] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[28]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity ("RFC")—that is, "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[29] The ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[30] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[31]

---

[27] 20 C.F.R. §§404.1520(a), 416.920(a).
[28] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).
[29] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).
[30] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).
[31] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[32] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[33]

## B. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[34] Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[35] Supportability means

---

[32] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).
[33] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.
[34] 20 C.F.R. § 404.1520c(c).
[35] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

"[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[36] The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[37]

It is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[38] When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[39] Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[40] On the other hand, in cases where no medical opinion credibly supports the claimant's

[36] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[37] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).
[38] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[39] *Mason*, 994 F.2d at 1066.
[40] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[41]

C. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is deferential; we must simply determine whether the ALJ's decision is supported by substantial evidence in the record.[42] Judged against this deferential standard, we conclude that substantial evidence supported the ALJ's decision in this case.

Elliott alleges that the ALJ failed to properly account for limitations from the opinions of the psychiatric consultative examiner and the non-examining state agency psychiatric consultant, which the ALJ found to be persuasive.[43] Elliott first argues that the ALJ's conclusion that Elliott was limited to occasional interaction with co-workers and supervisors, but no public interaction[,]" is inconsistent with the examining opinion of psychiatric consultative examiner Dr. Cole and the non-examining opinion of Dr. Cloutier.[44] Dr. Cole opined Elliott had

[41] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).
[42] *Biestek*, 139 S. Ct. at 1154.
[43] Doc. 9 at 6-7.
[44] *Id.* at 7; Tr. 28-29.

moderate limitations interacting appropriately with the public, supervisors, and co-workers.[45] Dr. Cloutier opined Elliott was "moderately limited" in his "ability to interact appropriately with the general public" and his "ability to accept instructions and respond appropriately to criticism from supervisors."[46]

Elliott presumably takes issue with the fact that the ALJ found the opinions, which identified a moderate social limitation persuasive, but limited Elliott to occasional interaction with co-workers and supervisors and no interaction with the public. A moderate limitation, however, does not dictate a particular frequency of interaction, and an ALJ may differentiate between different social groups for social interaction purposes, depending on the evidence.[47]

Here, the ALJ's differentiation between the "public" and "co-workers and supervisors" is supported by substantial evidence and

---

[45] Tr. 880.

[46] Tr. 77.

[47] *See Lori O. S. v. O'Malley,* No. 23-CV-3859, 2024 WL 3522190, at *8 (E.D. Pa. July 24, 2024); *Nieves De Jesus v. Comm'r of Soc. Sec.*, No. CV 23-680, 2024 WL 2701696, at *6 (E.D. Pa. May 24, 2024) (affirming the ALJ's finding of a moderate, rather than marked, limitation in interacting with others as supported by substantial evidence, including restrictions to no public contact and only occasional interaction co-workers).

presents no unexplained conflict or inconsistency. In limiting Elliott to simple and low-stress work that did not require interaction with the public, the ALJ credited Elliott's hearing testimony "that he doesn't talk to people, and he stays isolated[,]" and "[h]e doesn't go to the store unless it is late at night and there are no people there."[48] Elliott's briefing likewise provides that "[a]t his administrative hearing, he testified that he had difficulty interacting with his family[,] and "endorsed not interacting with people and isolating."[49]

Further, Dr. Cole and Dr. Cloutier both identified moderate limitations in Elliott's ability to interact with the public.[50] In finding Dr. Cole's opinion persuasive, which opined that Elliott had moderate limitations in his ability to interact appropriately with the public, the ALJ recognized his opinion's consistency with Elliott's testimony.[51] In limiting Elliott to only occasional interaction with co-workers and supervisors, the ALJ acknowledged that "[d]espite the foregoing,

> [C]laimant's mental status examinations consistently note he is alert and oriented to person, place, and time, as well as with normal mood, behavior, thought content and judgment.

---

[48] Tr. 24.
[49] Doc. 9 at 3.
[50] Tr. 77
[51] Tr. 28-29.

> Further, claimant's medical records do not reflect him having any problems interacting with any of his providers or their staff.[52]

Thus, the ALJ could reasonably find, as he did here, both an ability to engage in occasional workplace interactions and an inability to interact with the public. Given that the ALJ considered all the evidence and adequately explained the decision for differentiating between Elliott's ability to interact with co-workers and supervisions from his ability to interact with the public, as established by the evidence, we find no error with the decision.

In any case, any error in this regard is harmless,[53] as Elliott fails to identify how different limitations placed on either group would have led to a different outcome in his case. Accordingly, there is no basis for a remand on this issue.

---

[52] Tr. 24.

[53] Social Security appeals are subject to harmless error analysis, under which a remand is warranted only if the plaintiff shows the error prejudiced his "substantial rights" by likely affecting the outcome of the proceeding. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (requiring the party attacking the agency's determination to explain how the error "could have made any difference."); *see e.g. Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014); *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).

Elliott next argues that the ALJ failed to address the need for rest periods in the RFC, despite Dr. Cloutier's check-box form opinion that Elliott is moderately limited in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."[54] Dr. Cloutier's additional written explanation, however, provides that Elliott "retains ability to perform simple routine tasks on sustained basis with adequate behavior."[55] The ALJ specifically found Dr. Cloutier's opinion regarding "[t]he 'B' criteria limitations and the mental [RFC] limitations to simple routine tasks and social limitations" to be "well supported by the doctors and are consistent with the longitudinal evidence of record and are persuasive."[56]

At the outset, we note that the Third Circuit has suggested that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."[57] We find this to be particularly the case here, where the limitations set forth in the form are further

---

[54] Doc. 9 at 7; Tr. 77.
[55] Tr. 77.
[56] Tr. 28.
[57] *Mason*, 994 F.2d at 1065.

explained by the physician's own notes that Elliott is able to perform simple routine tasks on a sustained basis.[58] The ALJ clearly discussed the supportability and consistency of this opinion and set forth her reasoning for finding it persuasive.

Again, any error in this regard is harmless,[59] as Elliott fails to identify any evidence that imposing additional RFC limitations would have led to a different outcome in his case. While the VE testified that a limitation requiring additional breaks would render an individual essentially unemployable,[60] Elliott's briefing dedicates a total of two sentences regarding the omission of rest periods and fails to provide any evidence that such a limitation was established by the record.[61] Accordingly, there is no basis for a remand on this issue.

---

[58] *See* Tr.77.
[59] *See Sanders*, 556 U.S. at 409.
[60] Tr. 56-57.
[61] Doc. 9 at 7.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 25th day of September 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge